2026 IL App (1st) 231476-U

Fourth Division
Filed July 30, 2026

Nos. 1-23-1476 and 1-23-2101 (cons.)

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| DAVID MARCHI, derivatively on behalf of Matthew Christopher, Inc., an Iowa Corporation, | ) ) ) |
| Plaintiff-Appellee and Cross-Appellant | ) |
| v. | ) ) |
| CENTRUST BANK, N.A., | ) |
| Defendant-Appellant and Cross-Appellee. | ) Appeal from the ) Circuit Court of Cook County |
| CENTRUST BANK, N.A., | ) |
| Plaintiff-Appellant and Cross-Appellee | ) Nos. 2022 L 010795, 2023 L 000942 ) |
| v. | ) The Honorable Thomas M. Donnelly, ) Judge, presiding. |
| ROBERT GOODRICH, DAVID MARCHI, GARY RADA, and MATTHEW CHRISTOPHER, INC., an Iowa Corporation, | ) ) ) ) |
| Defendants | ) |
| (Robert Goodrich and David Marchi, Defendants-Appellees and Cross-Appellants.) | ) ) |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Navarro and Justice Quish concurred in the judgment.

**ORDER**

¶ 1    *Held*:    (1) The trial court correctly found the asset sale commercially unreasonable under the Uniform Commercial Code; (2) Centrust did not prove fraud in the inducement; (3) there was no civil conspiracy, as supported by the evidence; and (4) Marchi and Goodrich did not tortiously interfere with loan contracts. On cross-appeal, relief for improper disposition was denied due to lack of proven damages, and default against MCI was proper.

¶ 2    These consolidated appeals arise out of a series of failed loans extended by Centrust Bank, N.A. (Centrust),[1] to Matthew Christopher, Inc. (MCI), a company in the business of selling wedding dresses. Centrust brought suit against MCI for breach of contract and against two minority shareholders in MCI, David Marchi and Robert Goodrich, for breach of guarantees related to the MCI loans, fraud, civil conspiracy, and tortious interference with contract. Separately, Marchi brought a derivative action on MCI's behalf against Centrust for breach of fiduciary duty, tortious interference with business relationships, and improper disposition of collateral. The matters were consolidated. After a three-day bench trial, the court entered judgments in favor of Marchi and Goodrich on Centrust's claims and in favor of Centrust on Marchi's derivative claims. It also entered a default judgment against MCI on Centrust's breach of contract claim.

¶ 3    On appeal, Centrust challenges the judgments in favor of Marchi and Goodrich. Likewise, Marchi appeals from the judgments in favor of Centrust on his derivative claims. Marchi and Goodrich also purport to appeal from the entry of a default judgment against MCI. For the following reasons, we dismiss the purported appeal from the default judgment against MCI; otherwise, we affirm.

¶ 4                               I. BACKGROUND

¶ 5    Centrust originally brought suit in 2019 against MCI, Marchi, Goodrich, and former MCI employee Gary Rada (who is not a party to this appeal). Marchi filed counterclaims derivatively on behalf of MCI. In May 2022, Centrust moved for a default judgment against MCI, asserting that it did not seek relief against MCI because it was a nominal party. On the eve of trial, in October

_____

[1]    Centrust is now known as SmartBiz Bank, N.A.

2022, Rada filed for bankruptcy, and the parties voluntarily dismissed their respective claims with leave to refile. See 735 ILCS 5/2-1009 (West 2018).

¶ 6        On December 5, 2022, Marchi filed a derivative complaint on behalf of MCI against Centrust for (1) breach of fiduciary duty, (2) tortious interference with business relations, and (3) improper disposition of collateral under article 9 of the Uniform Commercial Code (UCC) (810 ILCS 5/9-101 *et seq.* (West 2018)).

¶ 7        On January 31, 2023, Centrust filed a complaint asserting the following claims: (1) breach of contract against MCI and Marchi; (2) breach of contract against Goodrich; (3) breach of contract against Rada; (4) fraudulent concealment against Rada; (5) fraud in the inducement against Goodrich, Marchi, and Rada; (6) civil conspiracy against Goodrich, Marchi, and Rada; and (7) tortious interference against Goodrich, Marchi, and Rada. Prior to trial, Centrust voluntarily dismissed its claims against Rada.

¶ 8        On March 22, 2023, Marchi filed his answer and affirmative defenses to Centrust's complaint. He denied all material allegations and raised one affirmative defense to the breach of contract claim, characterized as "impairment of collateral/failure to sell collateral in a commercially reasonable manner."

¶ 9        On May 15, 2023, Goodrich filed his answer and affirmative defenses. He similarly denied all material allegations and asserted three affirmative defenses to the breach of contract claim: (1) breach of the implied covenant of good faith and fair dealing, (2) contributory negligence, and (3) improper disposition of collateral.

¶ 10       The cases were consolidated and proceeded to a bench trial, where the evidence showed as follows.

¶ 11       MCI was a wedding dress design and manufacturing company founded by Matthew Christopher Sobaski. By 2017, Sobaski owned a majority share of the company, while Marchi and Goodrich held minority ownership interests and served as directors. MCI experienced seasonal fluctuations and, by early 2017, began encountering cash flow issues.

¶ 12     Gary Rada and his company, Rada Concepts LLC, were hired in 2013 by MCI's board of directors. On April 1, 2017, Rada Concepts and MCI entered into a consulting services agreement, where Rada Concepts agreed to provide consulting and operational management services for MCI. Their responsibilities included accounting, budgeting, strategic planning, financial reporting, human resources, payroll, and corporate governance. Rada was given "the authority as Chairman to pursue any and all Commercial Loans as necessary." Rada reported back to the board of directors. Centrust primarily corresponded with Rada when servicing MCI's loans. Rada hired Tony Scott as MCI's accounting manager in 2013. Scott handled accounting work for Rada and spent the majority of his time working for MCI.

¶ 13     In 2016, MCI sought financing from Centrust, a community bank located in Northbrook that specialized in making commercial loans to small businesses. At all relevant times, Jim McMahon was Centrust's CEO and president, and Thomas Meyer was one of its senior loan officers. Both McMahon and Meyer were involved in servicing the loans.

¶ 14     After reviewing MCI's financial information, in April 2017, Centrust extended MCI a $951,000 United States Small Business Administration (SBA) loan and provided an additional $350,000 commercial line of credit. In December 2017, it extended another SBA loan of $262,000, and in January 2018, it increased the limit on MCI's line of credit to $550,000. The SBA loans were secured loans, with MCI's equipment, inventory, accounts, and intangibles serving as the collateral. Marchi guaranteed both SBA loans and executed a limited personal guarantee of the line of credit, and Goodrich guaranteed the December 2017 SBA loan.

¶ 15     To support its loan applications, MCI provided Centrust with financial statements. Subsequently, Centrust asserted that these statements overstated MCI's revenues, inventory, and accounts receivable. Additionally, Centrust alleged that Goodrich misrepresented his ownership percentage in MCI on an SBA borrower information form, indicating 17.5% ownership rather than more than 22%. Centrust contended that this discrepancy was significant because SBA regulations require guarantees from shareholders who own 20% or more of the company.

¶ 16    In early 2018, MCI continued to experience financial difficulties. On May 31, 2018, Rada retained Second Wind Consultants to assist with restructuring and debt negotiations of MCI. According to the record, discussions among Marchi, Goodrich, Rada, and Second Wind included proposals to redirect customer payments to accounts outside Centrust, permit the loans to go into default, create a new entity to acquire MCI's assets, and negotiate a reduced payoff with the bank. A new company, ADU Bridal, LLC, was formed in connection with these discussions, and Second Wind later approached Centrust with an offer to purchase MCI's assets for $50,000 in exchange for a release of Centrust's liens and waiver of remaining deficiencies.

¶ 17    Shortly thereafter, MCI failed to make its June 2018 loan payments. On June 13, 2018, Centrust declared MCI in default and accelerated the debt. On June 14, 2018, Centrust sent letters to MCI's customers directing them to pay Centrust directly, which MCI contends resulted in a loss of business for them.

¶ 18    In late June 2018, Centrust installed Michael Robinson as chief operating officer and collateral manager for MCI. Robinson assumed control over MCI's financial operations and prepared financial information on the company's behalf. McMahon testified that Robinson had a history of operating large businesses and was confident of Robinson's ability to take on the assignment of MCI. McMahon stated that Robinson was assigned to MCI because they were concerned that Centrust was not getting accurate reporting of cash collected or the inventory levels.

¶ 19    During Robinson's review of MCI's finances, he concluded that certain financial information provided to Centrust incorrectly classified consignment inventory as accounts receivable. Centrust determined that MCI could continue as a viable business and decided to liquidate MCI's assets as a means of recovery.

¶ 20    Following default, Centrust sought to dispose of MCI's assets under article 9 of the Uniform Commercial Code (UCC) (810 ILCS 5/9-101 *et seq.* (West 2018)). To find a buyer, Centrust engaged Gladiator Group, an investment banking firm. While searching, Centrust also brought in Michael Size to appraise MCI's business assets. Size produced two very different appraisals, each based on separate assumptions about inventory and disputed assets. The first appraisal, dated

March 19, 2019, placed MCI's fair market value at roughly $3.8 million, relying on MCI's financial statements and reported inventory. However, a second appraisal from July 29, 2022, estimated the company's value at just $275,000 after excluding disputed assets and revising the inventory assessment—a dramatic discrepancy.

¶ 21 Centrust explored multiple sale opportunities over approximately one year. Initial offers for MCI's assets ranged from $50,000 to between $300,000 and $400,000. Ultimately, Centrust sold MCI's assets through a private UCC sale to Rotterdam Private Equities. Through its president, William Van der Velde III, Rotterdam offered $500,000 for all of MCI's assets. Centrust countered at $1,000,000. Centrust and Rotterdam eventually agreed to a price of $775,000.

¶ 22 On July 19, 2019, Centrust announced a private sale of MCI's assets for $775,000 to Marchi, Goodrich, and Sterling Capital Group (an MCI creditor who had submitted a lower offer roughly one year earlier); no objections were raised. The sale was finalized on July 31, 2019, with Matthew Christopher Van Der Velde, LLC, purchasing the assets, fully financed by Centrust. Afterwards, Centrust pursued deficiency recovery from Marchi and Goodrich as guarantors.

¶ 23 Centrust retained Matthew Brash, a senior managing director at financial advisory firm New Point Advisors, to testify at trial. Brash was to evaluate the UCC sale and Centrust's handling of the collateral. Brash opined that Centrust acted reasonably in protecting and marketing the collateral after default and concluded that the UCC sale of $775,000 was commercially reasonable and was the highest and best offer Centrust could have received. He also testified that the retention of Second Wind, the proposed $50,000 asset purchase, and efforts to redirect receivables away from Centrust was a "clear cause [*sic*] of fraud to deceive the bank."

¶ 24 Donald Coker was hired by the defendants to provide an expert opinion regarding the UCC sale. He determined that MCI's sale did not meet the standard of commercial reasonableness. According to Coker, a commercially reasonable sale under the UCC means a secured creditor must make a sensible business effort to secure the highest possible price. Yet, he also admitted that article 9 of the UCC does not obligate a lender to get an appraisal before conducting a sale.

¶ 25    Coker acknowledged MCI's default on the loans but expressed concerns regarding Centrust's subsequent actions. He objected to Centrust's approach of notifying MCI's customers and directing payments to themselves. However, Coker was unable to specify any particular customers who may have been lost as a result. Additionally, he noted Robinson's potential conflict of interest, while offering no opinion on whether this alleged conflict influenced the UCC sale.

¶ 26    At the close of Centrust's case, Marchi and Goodrich moved for a directed finding on Centrust's claims for fraud in the inducement and civil conspiracy. The trial court granted the motion as to fraud in the inducement, finding that Centrust had not presented a *prima facie* case. The trial court denied Marchi's and Goodrich's motion for a directed finding on all Centrust's other claims.

¶ 27    The trial court rendered its judgment on July 14, 2023. The court determined that Marchi and Goodrich were not liable for any of Centrust's claims. Specifically, the court found that Centrust failed to establish a breach of contract, as it could not demonstrate that the UCC sale satisfied the commercial reasonableness criteria under article 9 of the UCC. The court's reasoning primarily addressed the sale price, referring to persuasive arguments from closing statements. Van der Velde appraised the collateral at $1.4 million, whereas a Texas-based businessman named Chris Anders assessed it at $4 million; the court questioned the bank's rationale for accepting a comparatively low offer. Additionally, reliance was placed on McMahon's testimony and demeanor, with the conclusion that he was motivated against MCI. The court emphasized that Centrust bore the burden of proving unreasonable conduct but presented no evidence regarding its obligation to vigorously promote the sale. Apart from these considerations, the trial court provided no additional findings or context for Centrust's remaining claims and ruled in favor of Marchi and Goodrich without further elaboration.

¶ 28    The trial court ruled in Centrust's favor on Marchi's derivative complaint. Because MCI did not appear, answer, or assert any affirmative defenses to Centrust's complaint, the trial court entered judgment in favor of Centrust as to breach of contract against MCI for the full amount of $1,528,001.21 due under the loans.

¶ 29                                   II. ANALYSIS

¶ 30        This case presents several interrelated issues rising from Centrust's effort to recover on loans made to MCI and subsequent disposition of MCI's assets. The primary issue is whether the sale of MCI's assets under article 9 of the UCC was conducted in a commercially reasonable manner. Closely tied to this question are whether Centrust met its burden of proof and whether the trial court applied the correct legal standard in evaluating the sale. Additionally, the case raises issues concerning the proper determination of MCI's fair market value and the legal consequences of an unreasonable sale, including the impact on Centrust's ability to recover under the loan agreements. We also consider whether Marchi and Goodrich have standing to appeal from the default judgment entered against MCI and, if so, whether that default judgment should be vacated.

¶ 31                                   A. UCC Sale

¶ 32        Under article 9 of the Uniform Commercial Code, a secured party may dispose of collateral after default, provided that every aspect of the disposition, including the method, manner, time, place, and other terms, is commercially reasonable. 810 ILCS 5/9-610 (West 2018). The secured party bears the burden of establishing that the disposition meets this standard. *Boender v. Chicago North Clubhouse Association, Inc.*, 240 Ill. App. 3d 622, 627 (1992). Commercial reasonableness is typically an issue of fact (*Pioneer Bank & Trust Co. v. Mitchell*, 126 Ill. App. 3d 870, 873 (1984)) and is not well suited to disposition by dismissal. *Willard v. Northwest National Bank of Chicago*, 137 Ill. App. 3d 255, 263 (1985). While price is a relevant fact, it is not dispositive. *Louis Zahn Drug Co. v. Bank of Oak Brook Terrace*, 95 Ill. App. 3d 435, 442 (1981). A trial court's findings as to whether the sale is commercially reasonable will not be reversed unless against the manifest weight of the evidence. *Ryder v. Bank of Hickory Hills*, 242 Ill. App. 3d 1042, 1047 (1993).

¶ 33        Centrust argues that the judgment entered in favor of Marchi and Goodrich on Centrust's breach of contract claims should be reversed because the sale conducted under the UCC was commercially reasonable. According to Centrust, the trial court erred by improperly focusing on

the sale price alone, despite the UCC's requirements that all aspects, such as method, timing, and manner of the disposition, be considered. Centrust maintains that $775,000 was a favorable result. Centrust notes that the sale price substantially exceeded Second Wind's $50,000 offer and the bank's internal valuation. Centrust further contends that it made extensive efforts to find buyers on a private basis for over a year after MCI's default so it would result in higher realization on collateral for the benefit of all parties concerned. Centrust also asserts that if they had sold MCI's assets at a public sale, the sale price would have been less than $775,000.

¶ 34    Marchi and Goodrich, in contrast, argue that the trial court correctly found that the sale was not commercially reasonable. Centrust's complaint alleged breach of contract against Marchi and Goodrich and asserted that Marchi and Goodrich breached the terms of their personal guarantees and should be held personally liable for the amounts owed to Centrust by MCI. Marchi and Goodrich raised, as an affirmative defense, improper disposition of collateral, alleging that Centrust failed to conduct a commercially reasonable sale of MCI's assets. Marchi and Goodrich contend that because the sale of MCI was not commercially reasonable, they are relieved of their obligations under their respective guarantees. Specifically, they argue that the price at which MCI's assets were sold was too low compared to the earlier valuations and that Centrust mishandled the sale process, including dealing with customers. Marchi and Goodrich note that the trial court concluded that Centrust did not meet its burden of proof and that it could not find reasonableness based on "these facts." The trial court entered a final judgment in favor of Marchi and Goodrich on the claims asserted by Centrust against them for "the reasons stated on the record." Marchi and Goodrich further argue that in addition to the language in article 9 of the UCC, Centrust's actions were also governed by the requirements contained in SBA (a) Loan and Servicing and Liquidation. These additional requirements on Centrust included demonstrating that there were no conflicts of interest with MCI and that Centrust aggressively advertised the sale of MCI's assets.

¶ 35    The record reflects that the trial court considered multiple aspects of the disposition, including the way the sale was conducted, the lack of broad marketing efforts, and the circumstances surrounding the transaction. Although the court referenced the sale price as a significant factor, it

did not rely exclusively on that consideration. Accordingly, the trial court did not apply an incorrect legal standard.

¶ 36    The evidence presented at trial supported the trial court's finding that the sale was not commercially reasonable. Coker testified that a commercially reasonable secured sale requires meaningful efforts to obtain the highest available price and criticized Centrust's limited marketing of the collateral. He further questioned Centrust's decision to immediately redirect customer payments and the lack of broader advertising. Although Brash disagreed and opined that the $775,000 sale represented the highest obtainable price, the trial court was not required to accept his opinion. The court also heard evidence that Centrust financed the entire purchase price for the eventual buyer and considered the substantial disparity between the earlier valuation of approximately $3.8 million and the later appraisal of $275,000, which was prepared years after the sale and excluded significant assets. The trial court can reasonably conclude from this evidence that Centrust failed to demonstrate that every aspect of the disposition satisfied article 9.

¶ 37    Because commercial reasonableness presents a factual question (*Voutiritsas v. Intercounty Title Co.*, 279 Ill. App. 3d 170, 183 (1996)), the trial court was required to assess credibility and weigh conflicting expert opinions, evaluate McMahon's testimony and credibility, and determine what significance to give the competing appraisals. Nothing in the record makes the trial court's resolution of those factual disputes unreasonable or arbitrary. The court ultimately found that the sale was not commercially reasonable. A contrary conclusion is therefore not apparent, and the trial court's findings were not against the manifest weight of the evidence.

¶ 38                                        B. Contract and Personal Guarantees

¶ 39    The parties do not dispute that Marchi and Goodrich executed personal guarantees in connection with the loans extended by Centrust. These guarantees constitute valid and enforceable contracts. The record reflects that MCI failed to make required payments under the loan agreements in June 2018. Such failure constituted a default under the terms of the agreements, triggering Centrust's rights to accelerate the debt and pursue remedies. Following MCI's default,

Centrust demanded payment from Marchi and Goodrich pursuant to their guaranties. It is undisputed that no payments were made. Absent any valid defense, this would constitute a breach of the guaranties.

¶ 40    However, the enforceability of the deficiency is affected by the commercial reasonableness of the disposition of collateral. Since the trial court found that the sale was not commercially reasonable, Centrust's ability to recover under the guaranties was limited to the difference between "the sum of the secured obligation, expenses, and attorney's fees" and "the amount of proceeds that would have been realized had" it conducted a commercially reasonable sale. 810 ILCS 5/9-626(3), (3)(B) (West 2018). It is presumed, moreover, that a commercially reasonable sale would have realized an amount "equal to the sum of the secured obligation, expenses, and attorney's fees," and the burden was on Centrust to show that a commercially reasonable sale would have realized an amount "less than that sum." *Id.* § 9-626(4). On appeal, Centrust does not attempt to rebut this presumption. Accordingly, the trial court did not err in declining to impose liability on Marchi and Goodrich under the circumstances.

¶ 41                                   C. Fraud

¶ 42    Next, Centrust argues that the trial court's directed finding in favor of Marchi and Goodrich on Centrust's fraud in the inducement claim was wrong as a matter of law because Centrust established a *prima facie* case. Because a determination that a plaintiff has failed to present a *prima facie* case is a question of law, the trial court's ruling is reviewed *de novo* on appeal. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 275 (2003).

¶ 43    To establish fraud in the inducement, a plaintiff must prove "a false representation of material fact, made with knowledge or belief of that representation's falsity, and made with the purpose of inducing another party to act or to refrain from acting, where the other party reasonably relies upon the representation to its detriment." *Enterprise Recovery System, Inc. v. Salmeron*, 401 Ill. App. 3d 65, 72 (2010). The evidence presented included allegations regarding inaccuracies in financial statements and representations made in connection with the loan applications.

¶ 44     Centrust argues that MCI with Marchi and Goodrich's approval gave false financial statements stating inflated revenue and inventory. Centrust alleges that Goodrich lied about his ownership percentage to avoid guaranteeing a loan. Centrust argues that it relied on these representations when issuing the loans. Marchi and Goodrich argue that Centrust did not provide enough evidence of fraud and that the trial court correctly found no *prima facie* case.

¶ 45     Although Centrust introduced evidence that financial statements later proved inaccurate, it did not present evidence that Marchi and Goodrich knowingly made false representations with the intent to induce the loans. Nor did it establish that Goodrich's ownership percentage affected Centrust's lending decision. Because the evidence failed to establish multiple essential elements of fraud, the trial court correctly entered a directed finding.

¶ 46                                    D. Civil Conspiracy

¶ 47     Centrust contends that the trial court's ruling in favor of Marchi and Goodrich on Centrust's civil conspiracy claim should be reversed because the evidence presented at trial demonstrated that Marchi, Goodrich, Rada, and Second Wind engaged in a conspiracy to try to defraud Centrust and carried out multiple acts to its end. A trial court's findings following a bench trial will be reversed if they are against the manifest weight of the evidence. *Sheth v. SAB Tool Supply Co.*, 2013 IL App (1st) 110156, ¶ 40. "A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Eychaner v. Gross*, 202 Ill.2d 228, 252 (2002).

¶ 48     "The elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 209 Ill.2d 302, 317 (2004) (citing *Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54, 62-63 (1994)). A conspiracy is rarely proven with direct proof. *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 134 (1999). Usually, it must be established "from

circumstantial evidence and inferences drawn from evidence, coupled with common-sense knowledge of the behavior of persons in similar circumstances." *Adcock*, 164 Ill. 2d at 66.

¶ 49    Centrust argues that Marchi, Goodrich, and Second Wind created a scheme to default intentionally and then buy the assets through a hidden "straw buyer" for less than what the collateral is worth. Centrust alleges that this was a coordinated plan to defraud the bank. Centrust presented evidence, email messages and Second Wind's detailed plan concerning their efforts to restructure the company's obligations. Marchi and Goodrich argue that no unlawful agreements were made and their actions were business decisions, not fraud.

¶ 50    However, the existence of an agreement to engage in unlawful conduct was disputed. Although the emails demonstrated discussions regarding restructuring MCI's financial obligations and possible acquisition strategies after default, the trial court could reasonably conclude that they reflected negotiations over distressed assets rather than an agreement to accomplish an unlawful objective. The trial court likewise could find that Centrust failed to prove an overt unlawful act or resulting damages. In light of the conflicting evidence and the trial court's responsibility to evaluate witness credibility, its finding does not contravene the manifest weight of the evidence.

¶ 51                                    E. Tortious Interference

¶ 52    Centrust argues that the trial court erred in ruling in favor of Marchi and Goodrich on the tortious interference claim. To establish tortious interference with a contract, a plaintiff must plead and prove the following:

> "(1) the existence of a valid and enforceable contract between the plaintiff and a third party, (2) that defendant was aware of the contract, (3) that defendant intentionally and unjustifiably induced a breach of the contract, (4) that the wrongful conduct of defendant caused a subsequent breach of the contract by the third party, and (5) that plaintiff was damaged as a result." (Internal quotation marks omitted.) *State Auto Property & Casualty Insurance Co. v. Distinctive Foods, LLC*, 2024 IL

App (1st) 221396, ¶ 83 (quoting *Bank Financial, FSB v. Brandwein*,
2015 IL App (1st) 143956, ¶ 43).

¶ 53    Centrust argues that Marchi and Goodrich intentionally caused MCI to default and acted in their own interest, not the company's.

¶ 54    Marchi and Goodrich argue they did not improperly interfere and acted within their roles and rights. They also argue that there was no interference because Centrust did not present any evidence of damages, causation, or wrongful conduct.

¶ 55    The evidence presented established that Marchi and Goodrich were acting in their capacities as officers and shareholders of MCI while attempting to preserve the company during financial distress. The trial court could reasonably conclude that Centrust failed to prove their conduct constituted tortious interference with the loan agreements rather than corporate decision-making.

¶ 56                                F. Cross-Appeal

¶ 57    Turning to their appeal, Marchi and Goodrich first argue that the trial court erred in not awarding them damages since the trial court found the sale of MCI was commercially unreasonable. They argue that MCI was undervalued and therefore should be awarded damages.

¶ 58    If the plaintiff proves it is entitled to damages but does not "provide a proper basis for computing those damages, only nominal damages can be recovered." *Keno & Sons Construction Co. v. La Salle National Bank*, 214 Ill. App. 3d 310, 312 (1991).

¶ 59    Although the trial court found the sale to be unreasonable, it did not award damages to Marchi and Goodrich on their claim for improper disposition. The determination of damages requires proof of the value that would have been realized in a commercially reasonable sale.

¶ 60    Marchi and Goodrich presented valuation evidence through expert testimony. However, the trial court was not required to accept that testimony and was entitled to weigh it against other evidence in the record.

¶ 61    Because the trial court found the evidence insufficient to establish damages with reasonable certainty, it did not err in deciding to award relief on this claim.

¶ 62                                          G. Default Judgment

¶ 63        Finally, Marchi and Goodrich argue that the trial court committed reversible error when it entered a judgment in favor of Centrust and against MCI. They primarily argue that the default judgment entered against MCI violated due process and should be vacated because Centrust repeatedly represented that it was not seeking relief against MCI, causing MCI not to appear or defend itself.

¶ 64        A default judgment may be entered where a party fails to appear or defend, provided that proper notice is given and procedural requirements are satisfied. 735 ILCS 5/2-1301(d) (West 2024). The record reflects that MCI did not appear in the proceedings, and the trial court entered default judgment in favor of Centrust. The attorneys for Marchi and Goodrich then filed a motion to vacate that default judgment. On September 15, 2023, the trial court denied the motion to vacate. On October 16, 2023, Marchi and Goodrich filed a notice of appeal indicating that the appeal was being taken, in part, from the entry of the default judgment against MCI. Before briefing, Centrust filed a motion to dismiss the appeal from the default judgment, Marchi and Goodrich filed a response, and we took the motion with the case. We now grant that motion.

¶ 65        In support of its motion to dismiss, Centrust argues that Marchi and Goodrich lack standing to challenge the default judgment because any inquiry resulting from that judgment was suffered by MCI, not by them personally. Centrust further argues that Illinois courts have held that shareholders do not have standing to defend a corporation unless the corporation directors acted fraudulently by failing to defend it.

¶ 66        Marchi and Goodrich contend that they have standing to assert the arguments in the trial court and pursue this appeal. They further assert that a party has standing to appeal if that party's rights have been prejudiced by the judgment. According to Marchi and Goodrich, they may challenge the judgment derivatively on behalf of MCI because Centrust committed fraud upon the court by concealing prior statements and filings in which they acknowledge MCI was only a nominal party. Marchi and Goodrich also argue that Centrust's prior representations constituted binding judicial admissions, thereby preventing Centrust from later obtaining a judgment against MCI after MCI

relied on those statements. Marchi and Goodrich contend that Centrust's actions violated MCI's right to due process and did not receive adequate notice.

¶ 67     We first consider whether Marchi and Goodrich have standing, personally, to challenge the default judgment entered against MCI. Generally, only a party whose rights are prejudiced by a judgment may appeal, although a nonparty may do so if they have a "direct, immediate, and substantial interest in the subject matter, which would be prejudiced by the judgment or benefited by its reversal." *Marcheschi v. P. I. Corp.*, 84 Ill. App. 3d 873, 878 (1980). As the Illinois Supreme Court has explained, standing requires a litigant to have suffered a distinct, palpable injury to a legally cognizable interest. *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999). A party generally may not assert the rights or interests of another. *Id*. Here, the default judgment was entered against the corporate entity MCI, not Marchi and Goodrich individually. A corporation is a legal entity separate and distinct from officers, directors, and shareholders. *In re Rehabilitation of Centaur Insurance Co.*, 158 Ill. 2d 166, 172 (1994). Marchi and Goodrich lack standing to challenge the default judgment entered against the corporate defendant because they are separate legal entities and are not bound by the default judgment.

¶ 68     Marchi and Goodrich suggest that they can defend against Centrust's claim derivatively, on behalf of MCI, but they do not cite any authority that even remotely supports that position. The only case they cite, *Duncan v. National Tea Co.*, 14 Ill. App. 2d 280 (1957), addressed whether one shareholder can intervene in a derivative suit filed by another shareholder on the theory that the plaintiff shareholder is not adequately representing the interests of the shareholder seeking to intervene. *Id.* at 286. It does not stand for the proposition that a shareholder can, *ispo facto*, take an appeal from a judgment against the corporation. There is limited authority supporting the proposition that shareholders can defend suits on a corporation's behalf derivatively, but only when the corporate directors fail to defend either fraudulently or through willful neglect. See *First Arlington National Bank v. Addison Brookwood Country Club, Inc.*, 30 Ill. App. 3d 729, 730 (1975). Marchi and Goodrich have not alleged that those circumstances are present here. In their motion to vacate the default judgment and again on appeal, they only assert that they can seek

relief on MCI's behalf because they are shareholders, which is not sufficient to maintain a derivative defense of MCI.

¶ 69 Finally, Marchi and Goodrich contend that their attorneys have standing to appeal because they are officers of the court who are duty-bound to not stand idly by while Centrust procures a default judgment through fraud. They offer no support for this new-to-us theory of standing beyond the preamble to the rules of professional conduct, which describes lawyers as "officer[s] of the legal system." Ill. R. Pro. Conduct (2010), Preamble (eff. Jan. 1, 2010). That citation is plainly inadequate to support their remarkable claim, which requires no further discussion. Counsel are reminded that their professional obligations include a duty to "not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous." Ill. R. Pro. Conduct (2010) R. 3.1 (eff. Jan. 1, 2010).

¶ 70 The bottom line is that the right to challenge the default judgment against MCI belongs to MCI, not to Marchi or Goodrich, and certainly not to their lawyers. As Marchi and Goodrich lack standing to appeal from the default judgment, we dismiss their appeal from that judgment for want of jurisdiction. See *In re Estate of Henry*, 396 Ill. App. 3d 88, 100 (2009).

¶ 71                               III.  CONCLUSION

¶ 72 For the foregoing reasons, we dismiss Marchi and Goodrich's appeal to the extent that they purport to appeal from the trial court's entry of a default judgment against MCI. In all other respects, we affirm.

¶ 73 No. 1-23-1476, Affirmed.

¶ 74 No. 1-23-2101, Affirmed in part and dismissed in part.